(15 Misc. Rep. 648.)

## In re SCHOMAKER.

(Common Pleas of New York City and County, Special Term. December, 1895.)

BOARD OF EXCISE—REFUSAL OF LICENSE—REVIEW.
　　Refusal by the board of excise of an hotel license will not be disturbed, there being evidence from which it cannot be said that they acted arbitrarily, or without good and valid reasons, in refusing the license, on the ground that there was no public necessity therefor, and that applicant was not a fit and proper person to be intrusted with the license; the power to review their action being limited to this question.

Certiorari by John Schomaker to review the action of the board of excise in refusing a license.

David McClure and F. J. Bischoff, for relator.
Julius M. Mayer, for respondents.

BOOKSTAVER, J. On the 24th of September, 1895, the relator made application to the board of excise for an hotel license for the premises Nos. 57 and 59 Lexington avenue. On November 13, 1895, a hearing was had by the board upon the application, and on the same day it was rejected by the unanimous vote of the board, which assigned the following grounds for such rejection:

"The application of John Schomaker for an hotel license for the premises Nos. 57 and 59 Lexington avenue is rejected, and a license refused, for the reason that, considering the rights and interests of the property owners and residents of the neighborhood, and the number of existing licensed places in the vicinity of the place for which the license is sought, the board of excise is satisfied that there is no immediate public necessity or convenience to be served in granting such license at this time. On the further ground that said place is not a fit and proper place to be licensed, reference being had to the minutes of the board showing that an hotel license issued for this place was revoked by the board on April 18, 1895, upon complaint made and hearing had, alleging that the former licensee had permitted the said licensed premises to become disorderly, and the resort of disorderly and immoral persons, and a place for persons to visit for unlawful sexual intercourse, and for lewd, obscene, and indecent purposes. For the additional reason that the board of excise is satisfied, from the records of the board and the testimony taken upon the hearing had before the board, that said applicant is not a fit and proper person to be licensed, a license issued to him for the premises No. 755 Sixth avenue having been revoked."

Thereafter a writ of certiorari was obtained by the relator to review the action of the board, but upon such a review the court can only inquire whether the determination of the board of excise has been arbitrary, or made without good and valid reasons. Laws 1893, c. 480, § 24. In other words, the court can only inquire into the question as to whether or not fair and debatable grounds exist to form the foundation of a discretion which is to be exercise by the board. People v. Murray (Super.) 38 N. Y. Supp. 177; In re Bloomingdale, (Sup.) Id. 162; People v. Bennett, 4 Misc. Rep. 10, 23 N. Y. Supp. 695; People v. Waters, 4 Misc. Rep. 1, 23 N. Y. Supp. 691. And therefore it differs from certiorari to review the action of the board of police upon charges preferred (People v. French, 119 N. Y. 502, 23 N. E. 1061), or the board of excise in revoking a license upon charges made. In the latter class of cases the court, upon certiorari, must look into the evidence, and if it finds there is a preponderance of evidence against the determination of the commissioners, then it has the same jurisdiction to reverse the determination that it has to set aside the verdict of the jury as against the weight of evidence, and also to reverse if manifest error in law has been committed to the prejudice of the party accused. But in a case like this the only questions to be considered are those above stated. In fact an applicant for a license has not any statutory or legal right to a hearing, and the hearing, if granted, is a matter of custom and courtesy. The excise law provides for a hearing only in cases enumerated under section 28, c. 480, Laws 1893, upon which a complaint must be made, and upon which a revocation of a license may be had. On the other hand, in the granting of a license it is the right and duty of a board of excise to make all the investigations within its power. To that end its members may personally inspect the place sought to be licensed, may of their own motion investigate the character of the applicant, make all inquiries of every kind which are necessary for their information, and when they grant a hearing that hearing is had solely for the purpose of giving them information. Upon such hearing they are not, I apprehend, bound by the strict rules of evidence which are applicable in the cases of a hearing had upon complaint made under section 28 (People v. Murray, 42 N. E. 725, in which the court of appeals affirmed the decision of the general term of the supreme court [34 N. Y. Supp. 426]), and for the purpose of investigation may refer to all the records in its possession irrespective of whether the application is made during the tenure of office of any particular commission. It is proper, therefore, for the return to the writ of certiorari to contain all of such records and all of the acts of the excise board which were before the board at the time of considering this application, and upon which they acted.

Upon the hearing of the 13th of November, 1895, a number of witnesses were called on behalf of the applicant, all of whom testified as to his standing and character. Some of them had been his landlords, and others had been engaged expressly in investigating his conduct, and from their testimony I do not hesitate to

say that I believe him to be a man of good character. But the statute does not prescribe that the person shall be a man of moral character, or that his character or reputation must not be such as to subject him to contumely among his fellow men, but whether he is a fit and proper person to be intrusted with a license. And even in this respect the court is not to determine whether, in its judgment, the applicant is a fit and proper person, or whether the court, acting as a board of excise, would have granted a license to him; but the question rather is whether there was any reasonable ground on which one public officer might differ from another as to the fitness of the applicant to be a licensee of the board. And in arriving at a determination on this point they are not confined to the testimony given by the relator himself, or on his behalf, but may inquire into all the facts and circumstances relating to him and his application. In this case the relator had been convicted before it of keeping a disorderly house, and on the face of the application, as returned to us, this is admitted under his own signature to his application. It is true that the relator claimed that the note in red ink made upon the application, to the effect that the relator was the owner of the property at the time of the revocation, was an error, and ought not to affect the conclusion to which I would otherwise arrive. It was further claimed that it was not made by the relator, or any one on his authority, but was simply an unauthorized note, made by the clerk of the commissioners. Now, the fact as it appears from the return is that the license for the premises No. 755 Sixth avenue had been revoked while the license stood in the name of the relator; but he claimed that at the time of such revocation he was no longer its owner, nor in any way connected with the property, and that his connection with it had ceased some months before the revocation. It seems to me that the proper course for the relator to have taken in order to excuse himself from all responsibility for the conduct of the house in question was to have informed the board of excise or the police department of the sale of the licensed premises, or have had the license transferred to the purchaser thereof, under the authority of People v. Meyers, 95 N. Y. 223. Until this was done, the licensee was liable for the acts of his agent or any other person in charge of the premises, or any person holding himself out to the world as such with the knowledge of the licensee. The relator, therefore, stood before the board of excise upon this question in one of two positions: either he knew that the Sixth avenue premises were being conducted as a disorderly house, or he had such little regard for the privilege of a license to sell liquor that he paid no attention to the manner in which those premises were conducted, and subjected himself to risk of revocation. In either dilemma the board may well have concluded that one acting in such a manner under such circumstances was not one to be safely trusted with a license. But it further appears that the relator has been for many years an hotel keeper, and was presumably well acquainted with the business and its vicissitudes.

Upon the hearing he testified he entered into a contract involving the sum of $35,000, and yet that he did not know that a license for the premises which he thus undertook to obtain possession of had been revoked, and that he did not know the character of the business which had been carried on there, although the place had been a notoriously disorderly house. Moreover, he testified he made no inquiry to find out the reason for the revocation of the license at that place. It seems to me that the board might well offset these facts against the testimony of the witnesses produced by the relator.

Again, the board assigned as a reason for not granting the license that the place was not a fit and proper one to be licensed, reference being had to the minutes of the board showing that an hotel license issued for that place had theretofore been revoked by the board on the ground that the former licensee had permitted the premises to become disorderly and the resort of disorderly and immoral persons, etc.; and the return shows that when the board revoked the former license it had abundant grounds for doing so. In my opinion, however, the fact that the premises had at one time been used as the resort of disorderly and immoral persons does not stamp upon the real property permanent disability by reason of the faults of a tenant no longer in occupancy or control of the premises. It, however, justifies the board in exercising the utmost caution in granting a license to a place which had thus been occupied and used, even without the consent of the landlord. And some regard must be had to such a fact in determining whether the board acted arbitrarily, and without good and valid reasons, in arriving at a particular conclusion. As shown by the diagram annexed to the report of Inspector Welch, there was at the time this license was refused a full liquor license at No. 52 Lexington avenue, almost opposite the premises in question; at the northeast corner of Lexington avenue and Twenty-Fourth street there was an hotel license; and, as shown by the extracts from the record map of the board, there were in the vicinity altogether 12 licensed places. The necessity which calls upon the board to grant a license must be a public necessity. The fact that 25 or 30 people or 100 desire that liquor be sold on the premises in which they live argues nothing, and does not make it a public necessity; nor does the fact that the place is now used as an hotel create such a necessity. If this were the case, then the board might be required to grant a license to any of the large boarding houses, apartment houses, or other places of dwelling which exist in the thickly populated portions of the city. If, in the judgment of the board, the person applying for the license was not a fit and proper person to be intrusted with a license, if there was no public necessity for it, it would seem to follow that the rights and interests of the neighboring property owners and residents would be injured. It seems to me, under all the circumstances of the case, that the board was not wholly without grounds for the conclusions to which it arrived, and that there was such evidence

before it that I cannot say its members acted arbitrarily, and without good and valid reasons, in coming to the conclusion they did. The application will, therefore, be denied, with costs.

Application denied, with costs.